IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH LEYVA,

        Plaintiff,                    No. CIV S-08-0076 LKK KJM P

   vs.

LT. MORENO, et al.,

        Defendants.              FINDINGS & RECOMMENDATIONS

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. He alleges that during a February 2004 classification hearing, defendant Mandeville ignored his complaints about a prior improper disciplinary hearing and directed him transferred to Pelican Bay State Prison in retaliation for those complaints and because he was "tired of playing games with the Northern Hispanics." Plaintiff also complains about the manner in which a disciplinary hearing in October 2003 was conducted; however, the court did not order the complaint served on the individuals who, allegedly, acted improperly in connection with that hearing. See Order filed June 4, 2008 (Docket No. 4).

/////

/////

/////

1

1  Defendant Mandeville filed a first motion to dismiss, arguing that the complaint
2  failed to state a claim upon which relief can be granted, and that plaintiff failed to exhaust his
3  administrative remedies.  See Motion to Dismiss, filed Dec. 3, 2008 (MTD I) (Docket No. 14).
4  Defendant's motion was granted in part and denied in part.  Order filed Sept. 29, 2009 (Docket
5  No. 30).
6  In denying defendant's motion to the extent it relied on the argument that plaintiff
7  failed to exhaust his administrative remedies, the court found that defendant did not meet "his
8  burden of establishing plaintiff's failure to exhaust his administrative remedies with respect to
9  the claim against him" because he did "not present[] a reliable record of plaintiff's utilization of
10 the grievance process."  Id.  Thereafter, defendant amended and renewed his motion to dismiss
11 on the basis that plaintiff has failed to exhaust his administrative remedies.  Mot. to Dismiss filed
12 Oct. 30, 2009 (MTD II) (Docket No. 31).  Plaintiff has opposed the motion.  Defendant has not
13 filed a reply.

I.   Exhaustion Requirements Under The Prison Litigation Reform Act

15 The Prison Litigation Reform Act (PLRA) provides that "no action shall be
16 brought with respect to prison conditions under section 1983 of this title, . . . until such
17 administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Conditions of
18 confinement" subject to exhaustion have been defined broadly as "the effects of actions by
19 government officials on the lives of persons confined in prisons."  18 U.S.C. § 3626(g)(2); Smith
20 v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200
21 (2d Cir. 2002).  To satisfy the exhaustion requirement, a grievance must be filed within fifteen
22 working days of "any departmental decision, action, condition, or policy which [prisoners] can
23 demonstrate as having an adverse effect upon their welfare," Cal. Code § 3084.6; and, it must
24 alert prison officials to the claims plaintiffs have included in the complaint.  Porter v. Nussle, 534
25 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and
26 opportunity to address complaints internally before allowing the initiation of a federal case");

1   Brown v. Sikes, 212 F.3d 1205, 1209 (11th Cir. 2000) (§ 1997e(a) requires a prisoner to provide
2   as much relevant information as he reasonably can in the administrative grievance process).

3         Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S.
4   731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and
5   other critical procedural rules. . . ." Woodford v. Ngo, 548 U.S. 81, 90 (2006).  An inmate is
6   required to exhaust those remedies that are available; for a remedy to be "available,"
7   there must be the "possibility of some relief. . . ." Booth, 532 U.S. at 738.

8         California prison regulations provide administrative procedures in the form of one
9   informal and three formal levels of review to address an inmate's claims.  See Cal. Code Regs.
10  tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a plaintiff has
11  received a "Director's Level Decision," or third level review, with respect to his issues or claims.
12  Cal. Code Regs. tit. 15, § 3084.5.  The grievance process must be completed before the inmate
13  files suit; exhaustion during the pendency of the litigation will not save an action from dismissal.
14  McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

15        A motion to dismiss for failure to exhaust administrative remedies prior to filing
16  suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d
17  1108, 1119 (9th Cir. 2002).  In deciding a motion to dismiss for a failure to exhaust non-judicial
18  remedies, the court may look beyond the pleadings and decide disputed issues of fact.  Id. at
19  1119-20.  Defendants bear the burden of proving plaintiff's failure to exhaust.  Id. at 1119.  To
20  bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in

26  /////

1 |       this case,. . . . With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

II.    Exhaustion Requirements Relating To Claims Arising From The February 24, 2004 Classification Committee Meeting

      The issue in the pending motion is whether plaintiff has exhausted his administrative remedies for claims arising from the February 24, 2004 classification committee meeting, where defendant Mandeville allegedly said, "[Plaintiff] would find no sympathy from [defendant] or his staff, that [defendant and his staff] were tired of playing games with the Northern Hispanics as a whole and would continue to have them prosecuted and shipped to different prisons." Compl. filed Jan. 11, 2008 (Docket No. 1) at 10.[1]

      As noted, it is the defendant's burden to show that the plaintiff has failed to exhaust available administrative remedies. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2002). Evidence of failure to exhaust must be reliable before the court will grant a defendant's motion to dismiss. See id. (refusing to rely on the defendant's evidence in that case, the court noted that "there is no evidence in the record establishing that the 'Appeal Record' is what defendants say it is. We cannot tell from the record whether that document is a complete record of Wyatt's Director's Level appeals.").

      Defendant has produced several lists of plaintiff's appeals. See Decl. of R. Carter (Carter Decl.) & Exs. filed Oct. 30, 2009 (Docket No. 31-3); Declaration of N. Grannis (Grannis Decl.) & Exs. filed Oct. 30, 2009 (Docket No. 31-4); Declaration of S. Walch (Walch Decl.) & Exs. filed Oct. 30, 2009 (Docket No. 31-5). However, there are numerous problems with defendant's evidence, which raise questions regarding its comprehensiveness and reliability.

---

[1] Page references are to those assigned by the court's CM/ECF system.

1       The declaration of R. Carter, the former Appeals Coordinator at California State
2  Prison-Sacramento (CSP-SAC), presents several problems, the most obvious of which is that the
3  declaration is unsigned.  Because Carter's declaration ends abruptly at the bottom of the second
4  page without a date or signature, it is unclear whether Carter intended to add additional
5  information or even whether Carter intended to certify its contents.
6       Even if the court were to consider the contents of Carter's declaration, the
7  declaration avers that Exhibit A to his declaration lists "*all* [Levels I & II] appeals [plaintiff]
8  submitted for review while at CSP-SAC including those that were screened out."  Carter Decl.
9  ¶ 7 (*emphasis added*).  However, the headings, labels, and other information in Exhibit A create
10 doubts as to whether it is a complete record of plaintiff's appeals.  For example, the heading at
11 the top of the page labels the "Issue" as "MAIL" and the "Issue Subcategory" as "Loss/ damage
12 inmate mail package."  Despite this heading, the "Appeal History" section of Exhibit A contains
13 a list of claims, six of which are labeled "MAIL," two are labeled "DISCIPLINARY," and two
14 are labeled "PROGRAM."  Exhibit A also lists a "Screened Out" appeal received on
15 "12/29/2004," which was screened out because of an "Incomplete 602."  It is unclear why all of
16 plaintiff's appeals would be listed or categorized under either "MAIL" or "Loss/ damage inmate
17 package" when they appear to cover a broader range of topics.  It may be that the "Issue" listed
18 above the listing of appeals is not meant to describe the contents of the appeals listed below it,
19 but that is not made clear.  Because of the internal inconsistency in the document, the court
20 cannot determine exactly what is shown on Exhibit A.
21      These problems with Exhibit A are complicated when compared to Exhibit D,
22 attached but not referenced in the Carter declaration (or the portion of the declaration before the
23 court).  Exhibit D has the same heading as Exhibit A; however, Exhibit A is dated "12/03/2008"
24 and Exhibit D is dated "10/28/2009."  In contrast with Exhibit A, Exhibit D labels the "Issue" as
25 "DISCIPLINARY" and the "Issue Subcategory" as "Other."  There are also several discrepancies
26 in the "Appeal History" sections.  In contrast to the claims listed in Exhibit A's "Appeal History"

section, Exhibit D lists seven instead of six "MAIL" claims, and one instead of two "DISCIPLINARY" claims, as well as two "PROGRAM" claims.  Is the suggestion, somehow, that during the period between Exhibit A's creation and Exhibit D's creation, one of plaintiff's "DISCIPLINARY" claims from Exhibit A became a "MAIL" claim in Exhibit D?  Exhibit D also lists an appeal screened out on "04/01/2004" to "Clarify Issue: RVR dismissed or SHU term-If RVR."  If Exhibit A is a complete record of plaintiff's appeals, why are the issues of the claims listed on Exhibit A inconsistent with those listed in Exhibit D?  Further, why does not the screened-out April 2004 appeal not appear in Exhibit A, and why is the December 2004 appeal screened out for "Incomplete 602" on Exhibit A not shown on Exhibit D, a document dated almost a year later?  These inconsistencies create doubts as to the evidence's reliability as a complete record of plaintiff's appeals.

        Both Exhibits A and D pose another problem relating to the appeals listed in the "Appeal History" sections.  Carter's declaration, unsigned as it is, states that, "If an inmate does not submit his appeal for review beyond the informal level of review, it does not get date-stamped or assigned a log number."  Carter Decl. ¶ 4.  Yet, Exhibits A and D each have ten appeals listed in their "Appeal History" sections, eight of which have no log number.  Based on Carter's statements, it could be assumed that these appeals were resolved in plaintiff's favor at the informal level and, therefore, did not receive log numbers because they did not proceed past that level.  If that were true, one would expect some evidence or indication to that extent to appear in the procedural tracking section of the "Appeal History;" but, that is not the case.  If they did not receive log numbers because they were screened out, then why are they not included in the section of the print out identifying screened out appeals?  Finally, if any of these grievances were related to Mandeville's comments at the classification committee hearing and were resolved in plaintiff's favor, then further remedies might not have been available for him to pursue.  See Brown, 422 F.3d at 935.

/////

1          This problem is complicated by Carter's statement that, "Appeals that are not
2    submitted beyond the informal level of review do not appear on the IATS." Carter Decl. ¶ 4. If
3    the eight appeals listed without log numbers on Exhibits A and D were not submitted above the
4    informal level, why do they appear on an IATS printout? In light of these inconsistencies, the
5    missing information, and the lack of any evidence of the substance of the appeals listed in
6    Exhibits A and D, it is questionable whether the evidence presented is a complete and accurate
7    record of plaintiff's appeals.
8          Carter also avers that Exhibit C is a "recent print-out of [a screen-out letter for an
9    earlier appeal] with the date corrected." Carter Decl. ¶ 9. The printed date on Exhibit C is
10   December 3, 2008, but, in a handwritten parenthetical next to it, states "Date this form was
11   printed." Id., Ex. C. Next to this handwritten annotation, appears another: "Appeal was received
12   on 4.1.04 and screened out 4.2.04." Id. Carter makes no attempt to explain why the tracking
13   system cannot provide the actual record rather than a rough recreation of it. Asking the court to
14   rely on these handwritten annotations is akin to asking the court to "take defendant's word for it"
15   in order to meet his burden, which the court cannot do. Exhibit C also notes that "Log numbers
16   are not assigned to screen out appeals, or informal level appeals" and that the appeal was
17   screened out to "Clarify issue: RVR Dismissed or SHU term-If RVR attach CDC 115 PKG-If
18   SHU term attach copy of 629A." Id. The lack of any indicia of the letter's substance, other than
19   the cryptic description given for rejecting the appeal, leaves no way to determine what the
20   substance of the appeal was and if it related to the February 24, 2004 meeting.
21         In denying defendant's first motion to dismiss to the extent it relied on the failure
22   to exhaust administrative remedies, the court noted that N. Grannis listed an appeal identified as
23   #PBSP-06-00028, but did not provide a copy of that appeal. See Findings and Recommendations
24   filed Aug. 26, 2009 (Docket No. 28). In the present motion, defendant has attempted to cure this
25   omission by providing a copy of plaintiff's 602 grievance identified as #D06-00028 attached to
26   the Declaration of S. Walch. Walch Decl., Ex. B. This grievance, which did reach the Director's

Level, did not involve Mandeville's alleged actions in February 2004. Nevertheless, in light of the deficiencies in the record identified above, the copy provided now does not demonstrate that plaintiff has otherwise failed to exhaust administrative remedies with respect to that incident.

The court's findings on defendant's first motion to dismiss, note that it "cannot determine that this record is reliable or even exactly what it shows [and] the court will not rely on it as a complete record of plaintiff's grievance history." Defendant has failed to cure the defects previously identified and has not met his burden.

IT IS HEREBY RECOMMENDED that defendant's motion to dismiss be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 22, 2010.

_____
U.S. MAGISTRATE JUDGE