IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH M. LEYVA,

    Plaintiff,                     No. CIV S-08-0076 LKK CKD P

    vs.

MORENO, et al.,

    Defendant.               FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This case proceeds on the original complaint filed December 5, 2007 and transferred to this district on January 11, 2008. (Dkt. No. 1 ("Cmplt.").) Plaintiff claims that defendant Mandeville ordered plaintiff transferred to Pelican Bay State Prison in retaliation for plaintiff's exercise of his First Amendment Rights. (See Dkt. Nos. 28, 30 (dismissing other claims).) Pending before the court is defendant Mandeville's April 28, 2011 motion for summary judgment. Plaintiff has filed an opposition, and defendant has filed a reply. For the following reasons, the undersigned recommends that defendant's motion be granted.

\\\\

\\\\

1

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

\\\\

On September 10, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Discussion

A. Legal Standard

Plaintiff alleges that during a February 2004 classification hearing, defendant Mandeville ignored his complaints about a prior improper disciplinary hearing and directed him transferred to Pelican Bay State Prison in retaliation for those complaints.

To establish a First Amendment retaliation claim, plaintiff must show: (1) an adverse action against him; (2) because of; (3) his protected conduct, and that such action; (4) chilled his exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Prisoners alleging retaliation claims must demonstrate that: (1) prison officials retaliated against them for exercising their constitutional rights; and (2) the retaliation did not advance legitimate penological interests, such as the preservation of institutional order, discipline, and security.  Barnett v. Centoni, 31 F.3d 813, 316 (9th Cir. 1994).  Even if an inmate shows that the defendants' action was retaliatory, the inmate's retaliation claim still fails unless he produces significant probative evidence demonstrating that the retaliatory action did not advance a legitimate penological interest.  Id. at 815-16.  "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the [retaliatory] conduct [at issue]."  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995).

\\\\

\\\\

\\\\

\\\\

B. Factual Background

Plaintiff is serving a state prison term of 46 years to life for a 1997 conviction for attempted murder. (Dkt. No. 53-4 (excerpts from plaintiff's deposition) at 34[1].) The complaint concerns events at California State Prison-Sacramento between April 2003 and January 2005, when plaintiff was transferred to Pelican Bay State Prison. Plaintiff alleges that, on April 18, 2003[2], while waiting with a group of inmates (all identified by prison officials as Northern Hispanic) to be escorted to his housing section, he was conversing with an inmate named Sanchez when "Sanchez and plaintiff [were] unexpectedly attacked by two or three assailants." (Cmplt. at ¶¶ 1-7.) "While defending himself, plaintiff realized that the brunt of the assailants['] attack was directed at Sanchez. Upon realizing this plaintiff attempted to defend Sanchez." (Id. ¶ 8.) Plaintiff was handcuffed and escorted to a holding cell, and later correctional staff reported that plaintiff had participated in the attack on Sanchez. (Id. at ¶¶ 9-13.) As a result, plaintiff "was placed in administrative segregation and criminally prosecuted for the attempted murder of Sanchez[.]" (Id. at ¶ 14.) The criminal charges against plaintiff were later dismissed. (Id. at ¶ 34.)

Following a September 15, 2003 disciplinary hearing at which he pled not guilty, plaintiff was found guilty of attempting to murder Sanchez. (Id. at ¶¶ 22-26; see also Dkt. No. 58 at 33-35.) Plaintiff contends that he was denied due process of law at his disciplinary hearing and was convicted based on "falsified" reports from prison staff. (Id. at ¶¶ 13-14, 16-26.) As a result of his disciplinary conviction, he was assessed a 360-day loss of credits and placed in the Administrative Segregation Unit from January 2004 to January 2005. (Id. at ¶¶ 26-27.)

> On February 24, 2004, Plaintiff was seen by the prison classification committee. During this meeting Plaintiff once again

---

[1] Record citations refer to page numbers assigned by the court's docketing system.

[2] The complaint alleges that this incident occurred on April 19, 2003; however, documents attached to plaintiff's opposition to summary judgment state that it occurred on April 18, 2003. (Dkt. No. 58 at, e.g., 49, 56-59.)

5

> attempted to explain his innocence to the committee and relayed to them the due process violations committed during his [October 2003] 115 hearing.
>
> R. Mandeville who headed this committee dismissed plaintiff's allegations as irrelevant. Mandeville essentially explained to Plaintiff that he would find no sympathy from him or his staff that they were tired of playing games with the Northern Hispanics as a whole, and would continue to have them prosecuted and shipped to different prisons. He (Mandeville) called it 'cleaning up house.' Mandeville and the committee members decided Plaintiff would serve a 26 months SHU term, to be served at Pelican Bay State Prison.
>
> . . . Mandeville stated that he was not concerned about any hardships Plaintiff might have, and that Plaintiff was leaving his prison.
>
> . . .
>
> In January 2005, Plaintiff was transferred to Pelican Bay State Prison.

(Id. at ¶¶ 29-36.)

Plaintiff claims that his transfer to Pelican Bay was "committed in retaliation for Plaintiff's attempt to remove bias[ed] officers from his hearing and to vigorously defend the false charges brought against him. These actions infringed on Plaintiff's right to file or make prison complaints and had a chilling effect on Plaintiff's First Amendment rights." (Id. at ¶ 45.)

C. Analysis

In moving for summary judgment, defendant argues that plaintiff has failed to show a genuine factual dispute exists as to whether defendant retaliated against plaintiff for protected First Amendment activity.

A key document, submitted by both plaintiff and defendant in their summary judgment briefing, is a one-page report summarizing the February 25, 2004 classification hearing. (Dkt. No. 53-5 at 9; Dkt. No. 58 at 49 (same) ("ICC report").) Plaintiff acknowledged in deposition testimony that the purpose of this hearing was to determine plaintiff's Security Housing Unit (SHU) term for attempted murder, not to revisit the September 2003 finding that plaintiff was guilty of attempting to murder Sanchez. (Dkt. No. 53-4 at 8-10.) The hearing was

6

1  conducted by the Institutional Classification Committee (ICC), consisting of a chairman (Chief
2  Deputy Warden G. Stratton), Mandeville and two other prison officials, and recorder I. O'Brian.
3  (ICC report.)  The hearing report stated that the committee

> elects to: Retain in AD SEG pending transfer/MERD [minimum eligible release date]. . . . Assess and impose SHU term eff. 4/18/03, a 36 month aggravated determinate SHU term w/MERD of 7/18/05, RVR Log # C-03-04-049.  Refer to CSR for SHU audit/transfer to PBSP-SHU/COR-SHU.
>
> RVR dated 4/18/03, Log # C-03-04-049, has been adjudicated and S was found guilty of Attempted Murder. . . .
>
> This transfer recommendation is based on S's active SHU term with MERD of 7/18/05.
>
> . . .
>
> Aggravating factors: Yes, S's prior disciplinary record includes acts of misconduct of the same or similar nature.  Mitigating Factors: None.

(Id.)  Thus, the ICC report indicates that the committee decided to impose a 36-month SHU term based on plaintiff's disciplinary conviction for attempted murder, aggravated by his prior disciplinary record.

In deposition testimony, plaintiff acknowledged that, prior to the April 2003 incident concerning Sanchez, he received three Rule Violation Reports (RVRs), all resulting in SHU terms.  (Dkt. No. 53-4 at 31-34.)  The RVRs were for possessing a weapon (a razor blade) in 1997 and three incidents of battery on an inmate in 1997 and 1998.  (Id.; see also Dkt. No. 53-5 at 11-15 (RVR for July 22, 1998 battery).)  A SHU term assessment worksheet filled out by I. O'Brian (the recorder the ICC hearing) and signed on February 25, 2004 cites plaintiff's 1998 battery on an inmate as "prior behavior of same or similar nature" as an aggravating factor contributing to plaintiff's three-year term in SHU.  (Dkt. No. 53-5 at 17.)

The ICC report further indicates that the committee would "[r]efer to CSR" to effect plaintiff's transfer to either Pelican Bay or Corcoran State Prison.  (ICC report.)  In a declaration attached to his motion for summary judgment, defendant states: "Because California

7

1  State Prison-Sacramento did not have a SHU, the ICC recommended to the Classification Staff
2  Representative (CSR) that Leyva be transferred to either Corcoran State Prison or Pelican Bay
3  State Prison for his SHU term.  I did not order Leyva to be transferred to Pelican Bay State
4  Prison, nor did I have the power to do so.  Transfers are ordered by the CSR.  The CSR ordered
5  Leyva to be transferred to Pelican Bay State Prison for his SHU term." (Dkt. No. 53-3
6  ("Mandeville Decl.") at 2,  ¶¶ 7-8.)

7  Based on the foregoing evidence, defendant argues that he and other members of
8  the ICC simply determined that plaintiff's conviction for attempted murder, aggravated by
9  plaintiff's disciplinary record, warranted a 36-month term in SHU, and recommended to a
10 Classification Staff Representative that plaintiff be transferred to either Pelican Bay State Prison
11 or Corcoran State Prison to serve out that term. (Dkt. No. 53-1 at 5-8.)

12 In his opposition to summary judgment, plaintiff emphasizes two points: first, that
13 he was wrongfully convicted for the attempted murder of inmate Sanchez in proceedings that
14 violated due process; second, that while defendant Mandeville knew in February 2004 that
15 plaintiff's Central File contained "exonerating evidence," defendant "chose to do nothing" and
16 "made no mention to the other I.C.C. members of the violations or his duty to rectify a
17 constitutional wrong." (Dkt. No. 58 ("Opp.") at 11.)  Similarly, plaintiff contends that
18 defendant's "duties as Chief Disciplinary Office Reviewer " required him to "ensure inmates
19 rights are protected and rectify any wrong doing when such transpires. [Citation.] . . . Instead he
20 spearheaded the recommendation of transfer (knowing CSR would approve any recommendation
21 submitted by a ICC)." (Id. at 10.)  Plaintiff submits as attachments his April 18, 2003 RVR for
22 the attack on Sanchez, documents concerning the investigation into whether plaintiff participated
23 in the attack, and documentation of the September 15, 2003 hearing at which plaintiff was found
24 guilty of attempted murder.  (Dkt. No. 58 at 23-35.)  He also submits a signed statement from
25 inmate Sambrana dated September 20, 2003 stating that plaintiff was "an innocent bystander" to
26 the attack on Sanchez. (Id. at 41.)  Thus, plaintiff appears to argue that defendant "retaliated"

against him at the February 2004 classification hearing by refusing to revisit the question of whether plaintiff's disciplinary conviction for attempted murder was supported by sufficient evidence; instead, defendant recommended that plaintiff be transferred to serve out the SHU term his conviction warranted.

Drawing all reasonable inferences in plaintiff's favor, this does not amount to a First Amendment retaliation claim.[3] Plaintiff has not shown that defendant recommended him for an SHU term and/or transfer based on protected conduct, nor that defendant chilled plaintiff's exercise of his First Amendment rights. The ICC's recommendation reasonably advanced a legitimate correctional goal, given that plaintiff recently had been convicted of attempted murder and had served prior SHU terms for battery on inmates. As to defendant's alleged statements that he and his staff "were tired of playing games with the Northern Hispanics" and would continue to have them transferred as a way of "cleaning up house," the Ninth Circuit has held that "verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S. § 1983." Oltarzewski v..Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Moreover, these statements do not establish a genuine issue as to any material fact. The undersigned will therefore recommend that defendant's motion be granted.

Accordingly, IT IS HEREBY RECOMMENDED THAT:

1. Defendant's April 28, 2011 motion for summary judgment (Dkt. No. 53) be granted; and

2. Plaintiff's May 11, 2011 motion for witnesses at trial (Dkt. No. 55) be denied as moot.

---

[3] As to whether plaintiff's attempted murder conviction was supported by sufficient evidence and/or entailed due process violations, that question is not before the court and does not appear cognizable in a § 1983 action. See Heck v. Humphrey, 512 U.S. 477, 483-484 (1994) (requiring that prisoners first obtain reversal or expungement of disciplinary convictions via habeas petition or other means before challenging them in a civil rights action where success in the civil rights action would implicitly question the validity of the litigant's conviction or the duration of his sentence). In deposition testimony, plaintiff acknowledged that his conviction has not been overturned by writ of habeas corpus. (Dkt. No. 53-4 at 14.)

1  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 19, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
leyv0076.msj